The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

John M. PEAY, Defendant–Appellant.

No. 98CA1718.

Colorado Court of Appeals, Div. V.

June 22, 2000.

Ken Salazar, Attorney General, Dawn M. Weber, Assistant Attorney General, Denver, Colorado for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Lisa Dixon, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge KAPELKE.

Defendant, John M. Peay, appeals from the judgment of conviction entered on a jury verdict finding him guilty of one count of criminal impersonation, a class six felony, and one count of harassment, a class three misdemeanor. We affirm in part and reverse in part.

The criminal charges against defendant grew out of a disturbance at a residence where he had previously lived.

A tenant of the residence called the police to report the disturbance and to request that defendant be required to leave because he was intoxicated and "no longer welcome." When they arrived, the police were told by the tenant that defendant was in the kitchen. The tenant referred to defendant as John Peay.

When the police asked to see his driver's license, defendant said he did not have it with him but it might be in his car. When asked his name, defendant identified himself as "John Shaffer," rather than as John Peay. He also gave the police a false birth date.

The police then ran a background check under both names. The check revealed that there was an outstanding arrest warrant for John Peay. When defendant was asked his name a second time, he again identified himself as John Shaffer. He eventually gave his correct birth date and told police that Shaffer was his father's name.

The police placed defendant under arrest, and, as he was being escorted from the residence, he spat in the tenant's face and threatened her.

According to a police officer, while defendant was in the patrol car on the way to jail, he said that: "[H]e knew he had had a court date that he hadn't gone to." The arrest warrant, however, was not in fact related to defendant's failure to appear in court.

Defendant's driver's license, which was examined during a custodial search at the detention facility, identified him as John Peay, and evidence at trial revealed that to be his true name. The tenant did testify, however, that she had heard him use the name Shaffer on previous occasions when calling a cab.

Defendant was charged with one count of criminal impersonation pursuant to § 18–5–113(1)(e), C.R.S.1999, and one count of

harassment pursuant to § 18–9–111(1)(a), C.R.S.1999.

Prior to trial, defendant filed a motion to have the court declare § 18–5–113(1)(e) unconstitutional, asserting that the statute violated his equal protection rights because it prohibits the same conduct as that proscribed by § 18–8–111(1)(d), C.R.S.1999, which defines the less serious crime of false reporting to authorities. The trial court denied the motion.

At the close of the prosecution's case-in-chief at trial, defendant moved for a judgment of acquittal, arguing that the prosecution had failed to prove beyond a reasonable doubt that defendant was guilty of criminal impersonation. The court denied the motion, and the convictions here at issue followed.

### I.

Defendant first contends that the evidence was insufficient to support his conviction for criminal impersonation because the prosecution failed to prove that he committed "any other act with intent to unlawfully gain a benefit for himself," as required by the statute. We agree.

■ Initially, we reject the People's contention that defendant failed to preserve the issue of the sufficiency of the evidence as to the charge of criminal impersonation because he failed to raise it in his motion for acquittal. We are unaware of any authority supporting the People's contention. Accordingly, we will address the sufficiency issue.

■ Section 18–5–113(1)(e) provides, in pertinent part, that:

A person commits criminal impersonation if he knowingly assumes a false or fictitious identity or capacity, and in such identity or capacity he:

. . . .

(e) *Does any other act with intent to unlawfully gain a benefit for himself* or another or to injure or defraud another. (emphasis added)

The People argue that they presented sufficient evidence of the commission of such an additional act by showing that defendant gave the police not only a false name, but also a false birth date. In response to that argument, defendant urges that providing a false birth date would simply be part and parcel of the false identification itself and would not constitute an "other act" done with intent to gain a benefit unlawfully. We find defendant's position persuasive.

In *People v. Cole*, 23 Cal.App.4th 1672, 28 Cal.Rptr.2d 788 (1994), the California Court of Appeal considered essentially the same issue and arguments presented here under a statute that also included as an element of the felony offense the commission of "any other act" beneficial to the defendant or another person.

In *Cole*, as here, the People argued that their evidence that defendant provided a false birth date sufficiently established the additional act required for the felony conviction.

In rejecting the People's argument, the court stated:

[G]iving a false birthdate and middle name was no more than part of the act of providing the false information upon which the false identity was based. Each statement made in the course of providing contemporaneous statements amounting to false identification logically cannot be construed as separate acts compounding each prior statement.

*People v. Cole, supra*, 23 Cal.App. 4th at 1676, 28 Cal.Rptr.2d at 791.

We agree with the analysis of the *Cole* court and thus reject the People's assertion that proof of defendant's giving of a false birth date satisfied the "any other act" element of criminal impersonation under § 18–5–113(1)(e). Accordingly, we conclude that there was insufficient evidence to support defendant's conviction on the criminal impersonation count.

In light of our holding, we need not address defendant's other challenges to his conviction of that offense.

### II.

Defendant next contends that the evidence was insufficient to support his conviction for harassment. We disagree.

■ The applicable statute, § 18–9–111(1)(a), C.R.S.1999, provides that:

(1) A person commits harassment if, with intent to harass, annoy, or alarm another person, he or she:

(a) Strikes, shoves, kicks, or otherwise touches a person or *subjects him to physical contact.* (emphasis added)

As noted, while being escorted from the residence by the police, defendant spat in the tenant's face. Relying on dictionary definitions of "contact" that refer to the touching of some part of the body, defendant argues that his spitting in the tenant's face did not constitute a physical contact within the meaning of the statute. We are not persuaded.

We reject defendant's narrow construction of "physical contact." If we were to adopt defendant's interpretation, we would have to conclude that it would not constitute harassment if one were to strike another with a weapon or an object rather than with one's hands or some other part of the body. We see no basis for adopting such an interpretation.

Accordingly, we conclude that defendant's spitting on the tenant constituted "physical contact" within the meaning of the statute.

Courts of other jurisdictions have reached the same conclusion in interpreting the meaning of the term "physical contact." *See State v. Keller*, 40 Or.App. 143, 594 P.2d 1250 (1979) (spitting on another can constitute "offensive physical contact"); *People v. Walker*, 291 Ill.App.3d 597, 225 Ill.Dec. 633, 683 N.E.2d 1296 (1997) (throwing urine on another person amounts to "physical contact of an insulting or provoking nature").

### III.

Finally, defendant contends that because the court failed to give him a proper and complete advisement, pursuant to *People v. Curtis*, 681 P.2d 504 (Colo.1984), he did not knowingly, intelligently, and voluntarily waive his right to testify. We disagree.

■ At his trial, defendant was advised, in pertinent part, as follows:

The Court: Also if you get on the witness stand and testify, then the district attorney will be allowed to bring up any prior felony convictions that you might have for purposes of impeachment or as it might affect your credibility only. The jury couldn't use it for any other purpose, but they would learn about them in that way. Do you understand?

Defendant: Yes, I do.

After consulting with his counsel, defendant elected not to testify. The trial court found that defendant had "knowingly, voluntarily, and intelligently given up [his] right to testify."

■ A proper trial court advisement regarding the right to testify must inform defendant that: 1) the right to testify exists; 2) the right to testify is a personal right; 3) the defendant will be subject to cross-examination; 4) felony convictions may be disclosed; and 5) the convictions may be used to impeach credibility. *People v. Blehm*, 983 P.2d 779 (Colo.1999). Here, the trial court's advisement included all five elements and was thus proper.

In *Blehm*, as here, the trial court did not advise defendant that the jury would receive an instruction that evidence of prior felony convictions could be considered only for purposes of credibility impeachment. Nevertheless, the supreme court concluded that, while it is a desirable practice to do so, a trial court need not inform defendant "of the process by which the fact-finder may learn of this limited use of the convictions...." *People v. Blehm, supra*, 983 P.2d at 794. *Blehm* is dispositive.

Accordingly, the trial court did not err in determining there was a valid waiver by defendant of his right to testify.

The judgment of conviction for criminal impersonation is reversed, and the judgment of conviction for harassment is affirmed.

Judge ROTHENBERG and Judge CASEBOLT concur.